Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| EL PUEBLO DE PUERTO RICO<br><br>Recurrido<br><br>v.<br><br>EN INTERÉS DEL MENOR AJDJT<br><br>Peticionario | TA2025CE00949 | *CERTIORARI*<br>Procedente del Tribunal de Primera Instancia, Sala de Menores de Mayagüez<br><br>Caso Núm.:<br>2023-05-065-04005<br><br>Por: Art. 133 Código Penal |

Panel integrado por su presidenta, la jueza Lebrón Nieves, el juez Pagán Ocasio y la jueza Álvarez Esnard

Álvarez Esnard, jueza ponente

## SENTENCIA

En San Juan, Puerto Rico, a 20 de febrero de 2026.

Comparece ante nos el menor AJDJT, ("el menor" o "el Peticionario") mediante *Petición de Certiorari* presentada el 23 de diciembre de 2025. Nos solicita la revocación de la *Resolución* emitida el 25 de noviembre de 2025, y recibida por el Peticionario el 3 de diciembre del mismo año, por el Tribunal de Primera Instancia, Sala Superior de Mayagüez ("foro primario" o "tribunal *a quo*"). Por virtud del aludido dictamen, el tribunal *a quo* declaró *No Ha Lugar* la solicitud de desestimación al amparo del Artículo 4-A de la Ley de Menores de Puerto Rico, Ley Núm. 88 de 9 de julio de 1986, según enmendada, 34 LPRA sec. 2204a ("Ley de Menores") instada por el Peticionario.

Por los fundamentos que expondremos a continuación, **expedimos** el auto de *certiorari* y **revocamos** el dictamen recurrido.

### I.

Por hechos ocurridos el 1 de noviembre de 2023, el Pueblo de Puerto Rico ("el Pueblo" o "el Recurrido") presentó *Queja-*

*Querella* contra el Peticionario por violación al Artículo 133 del Código Penal de Puerto Rico, Ley 146-2012, según enmendada, 33 LPRA sec. 5194.[1] El aludido documento establece la siguiente alegación de hechos:

> Se le imputa la menor [AJDJT] que allá en o para el día 1 de noviembre de 2023, en horas de la tarde, y en San Juan, Puerto Rico, que forma parte del Tribunal de Primera Instancia de Puerto Rico, Asuntos de Menores, Sala de Mayagüez, ilegal, voluntaria y maliciosamente, con conocimiento y de manera temeraria, sin intentar consumar la Falta de Agresión Sexual, cometió un acto lascivo contra [JMVR], menor de 12 años de edad con discapacidad intelectual, consistente en que tocó con sus manos las partes privadas de la perjudicada, de forma lasciva y que tiende a despertar, excitar o satisfacer la pasión y deseos sexuales del imputado, en contra de la voluntad de la perjudicada, violando de esta forma el menor imputado el Artículo 133 del Nuevo Código Penal de Puerto Rico 2012.[2]

Posteriormente, el 13 de marzo de 2024, se llevó a cabo la vista de aprehensión, la cual culminó con una determinación de causa contra el menor AJDJT.

Tras varios incidentes procesales que no son necesarios pormenorizar, el 19 de agosto de 2025, el Peticionario presentó *Moción en Solicitud de Desestimación al Amparo del Art. 4-A de la Ley de Menores de Puerto Rico.*[3] En lo pertinente, esgrimió que los hechos que motivan el presente caso surgieron en un transporte escolar. Amparado en lo anterior, aludió que el Estado tiene conocimiento de que el menor, quien se encuentra ubicado en el Programa de Educación Especial, posee un diagnóstico de discapacidad intelectual desde hace varios años. En ese sentido, argumentó que no hubo agotamiento de remedios administrativos tal y como lo exige el Artículo 4-A de la Ley de Menores, *supra*. Argumentó que, de conformidad con el *Manual de Procedimientos de Educación Especial*, las alegaciones que se imputan en la *Queja*

---

[1] Véase, SUMAC-TA, Entrada Núm. 1, Anejo I.
[2] Véase, SUMAC-TA, Entrada Núm. 1, Anejo I.
[3] Véase, SUMAC-TA, Entrada Núm. 1, Anejo 1, Anejo II.

"debieron notificarse de manera inmediata al Director Escolar para proceder conforme la reglamentación, en específico la realización de un COMPU [Comité de Programación y Ubicación]".[4] Por tanto, razonó que el foro primario carecía de jurisdicción para atender la controversia.

Por su parte, el 11 de septiembre de 2025, el Pueblo presentó *Moción en Cumplimiento de Orden Fijando Posición del Ministerio Público en Relación a Moción de Desestimación al Amparo del Artículo 4-A de la Ley de Menores de Puerto Rico*.[5] Mediante este escrito, cuestionaron cómo un remedio administrativo podía solucionar problemas de conducta de índole penal. Agregó, que el asunto que estaba ante la consideración del tribunal *a quo* no era un conflicto escolar sino un asunto puramente de derecho. En sintonía con lo anterior, aludió que desestimar el pleito interferiría con la toma de decisiones de los Procuradores de Asuntos de Menores y la función judicial. Asimismo, señalaron que el mencionado Artículo 4-A de la Ley de Menores, *supra*, no limita la jurisdicción del foro primario para atender situaciones que surjan en el contexto escolar. Por consiguiente, ante este cuadro, el Pueblo se opuso a la solicitud de desestimación instada.

Tras llevarse a cabo una vista argumentativa, celebrada el 2 de octubre de 2025, el 25 de noviembre de 2025, notificada el 3 de diciembre del mismo año, el foro primario emitió *Resolución*.[6] Al amparo de este dictamen, el tribunal *a quo* concluyó que el Artículo 4-A de la Ley de Menores, *supra*, "versa sobre una jurisdicción primaria concurrente y no de una jurisdicción primaria exclusiva".[7] En ese contexto, concluyó que el texto de la aludida disposición le permite al tribunal asumir jurisdicción, realizando una evaluación caso a caso, tomando en consideración

---

[4] Véase, SUMAC-TA, Entrada Núm. 1, Anejo 1, Anejo II.
[5] Véase, SUMAC-TA, Entrada Núm. 1, Anejo 1, Anejo III.
[6] Véase, SUMAC-TA, Entrada Núm. 1, Anejo 1, Anejo V.
[7] Véase, SUMAC-TA, Entrada Núm. 1, Anejo 1, Anejo V, pág. 38.

la naturaleza de la falta en controversia y la aplicabilidad del Artículo 4.3 *Ley de Procedimiento Administrativo del Gobierno de Puerto Rico*, Ley Núm. 37 del 30 de junio de 2017, 3 LPRA sec. 9673 ("LPAU"), la cual establece los criterios para eximir a una parte de cumplir con la doctrina de agotar remedios administrativos. Tras efectuar este análisis, el foro primario concluyó que:

> [P]or la naturaleza de la falta, los hechos particulares del caso y la prueba vertida en la vista argumentativa, permite que este Tribunal determine eximir al Estado de agotar los remedios administrativos, toda vez que, en el balance de intereses entre las partes, no justifica que cedamos nuestra jurisdicción a la agencia. De igual forma aclaramos, que por tratarse de un asunto estrictamente de derecho, se hace innecesaria la presencia administrativa del Departamento de Educación, al probarse que no disponen de la experiencia necesaria, así como tampoco con los recursos para atender adecuadamente un caso de alto interés público, como lo es una falta contra la indemnidad sexual de una estudiante, por otro estudiante, en el entorno escolar.[8]

Cónsono con este fundamento, el foro primario denegó la solicitud de desestimación instada por el menor. Inconforme, el 23 de diciembre de 2025, el Peticionario presentó el recurso de epígrafe, mediante el cual formuló el siguiente señalamiento de error:

> ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL NO DESESTIMAR LA QUEJA QUERELLA PRESENTADA CONTRA EL MENOR AJDJT A PESAR DE QUE NO SE AGOTARON LOS REMEDIOS ADMINISTRATIVOS EN COMPLETA VIOLACIÓN AL ARTICULO 4-A DE LA LEY DE MENORES.

Adjunto a la petición presentada, acompañó *Moción Informativa Sobre Objeto Presentado Físicamente ante el Tribunal de Apelaciones*. Entre otras cosas, notificó que entregó a esta *Curia* la regrabación de los procesos de la vista argumentativa llevada a cabo el 2 de octubre de 2025. Así las cosas, el 13 de enero de 2026, este foro intermedio emitió *Resolución* en la cual declaró *Ha*

---

[8] Véase, SUMAC-TA, Entrada Núm. 1, Anejo 1, Anejo V, pág. 39-40.

*Lugar* la moción sobre el objeto físico presentado en la Secretaría de este Tribunal y, a su vez, le concedió a la parte Recurrida un término improrrogable hasta el 22 de enero de 2026 para presentar su oposición.

Con lo anterior expuesto, el 16 de enero de 2026, el Peticionario presentó *Moción Solicitando Auxilio de Jurisdicción y Paralización de los Prodedimientos* [sic]. En lo atinente, solicitó la paralización de la vista para causa señalada para el 26 de enero de 2026. Por su parte, de manera oportuna, el 22 de enero de 2026, el Pueblo presentó *Escrito en Cumplimiento de Orden.* Evaluados los planteamientos esbozados, esta *Curia* declaró *Ha Lugar* la solicitud instada, por virtud de la Resolución emitida el 23 de enero del mismo año.

Con el beneficio de la comparecencia de ambas partes y la prueba que obra en auto, la cual incluye la regrabación de la vista llevada a cabo el 2 de octubre de 2025, procedemos a exponer la normativa jurídica aplicable a la controversia objeto del recurso de epígrafe.

## II.

### A. Certiorari

"[U]na resolución u orden interlocutoria, distinto a una sentencia, es revisable mediante *certiorari* ante el Tribunal de Apelaciones". *JMG Investment v. ELA et al.,* 203 DPR 708, 718 (2019). El recurso de *certiorari* es un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un foro inferior. *Rivera et al. v. Arcos Dorados et al.,* 212 DPR 194, 207 (2023). Véase, además, *Torres González v. Zaragoza Meléndez,* 211 DPR 821 (2023).

No obstante, la discreción del tribunal apelativo en este aspecto no opera en un vacío ni en ausencia de parámetros. *BPPR v. SLG Gómez-López,* 213 DPR 314, 337 (2023). La Regla 40 del

Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, 215 DPR __ (2025), señala los criterios que se deben tomar en consideración al evaluar si procede expedir un auto de *certiorari*. *Íd.* Estos criterios son:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

El Tribunal Supremo ha expresado que la discreción es "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". *Mun. de Caguas v. JRO Construction*, 201 DPR 703, 712 (2019).

### B. *Ley de Menores de Puerto Rico, autoridad y jurisdicción*

La Ley Núm. 88 de 9 de julio de 1986, según enmendada, conocida como *Ley de Menores de Puerto Rico*, 34 LPRA sec. 2201, *et seq.* (en adelante, "Ley de Menores"), establece el deber del Estado en ofrecer nuevas alternativas de tratamiento que propicien la rehabilitación de la población juvenil transgresora. No obstante, para aquellos casos excepcionales, en que luego de haberse agotado los recursos disponibles mediante esta Ley, y que, por su conducta antisocial reiterada, su edad y naturaleza de la falta se entienda que el menor no pueda beneficiarse del sistema, se

establece el mecanismo de renuncia o cese de jurisdicción.  Véase, Exposición de Motivos de la Ley de Menores, *supra.*

En concreto, el Artículo 3 de la aludida legislación define a un **menor** como una persona que no ha cumplido dieciocho (18) años de edad, o que, habiéndola cumplido, sea llamada a responder por una falta cometida antes de cumplir esa fecha. Artículo 3, 34 LPRA sec. 2203 (o).  Se entenderá por **falta** la infracción o tentativa de infracción por un menor de las leyes penales, especiales u ordenanzas municipales de Puerto Rico, excepto las infracciones o tentativas excluidas por ley.  Artículo 3, 34 LPRA sec. 2205 (i).

Por otro lado, "[l]a jurisdicción de la Sala de Asuntos de Menores se encuentra delimitada por el Art. 4 de la Ley de Menores, 34 LPRA sec. 2204". *Pueblo en interés Menor LABM,* 188 DPR 232, 237 (2013). Particularmente, dispone que:

> (1) El tribunal tendrá autoridad para conocer de:
>
>> (a) Todo caso en que se impute conducta que constituya falta a un(a) menor de trece (13) años o más, incurrida antes de éste haber cumplido dieciocho (18) años de edad. El Tribunal no tendrá autoridad en todo caso donde la facultad mental del menor sea inferior a los trece (13) años. Dicha autoridad estará sujeta al período prescriptivo dispuesto en las leyes penales para la conducta imputada. Véase, Artículo 4 (1) (a), 34 LPRA sec. 2204.

Ahora bien, por virtud de la Ley Núm. 47 de 24 de junio de 2022, la Asamblea Legislativa de Puerto Rico incorporó el Artículo 4-A a la Ley de Menores, *supra.*  Conforme se desprende de la Exposición de Motivos de la Ley Núm. 47-2022;

> [E]sta Asamblea Legislativa tiene el interés de que se agoten los remedios administrativos previo que se presenten querellas contra menores ante el Tribunal cuando se trate de hechos ocurridos dentro de los planteles escolares. A tales efectos, se enmienda la Ley de Menores a los fines de requerir el agotamiento de remedios administrativos establecidos en el sistema de educación público o privado cuando la situación elevada a la consideración del foro judicial se origine en la institución educativa. De esta manera, pretendemos proveer alternativas adicionales para la solución de conflictos ocurridos dentro del plantel

escolar, sin la necesidad de que, de entrada, se exponga al(la) menor a enfrentar un proceso judicial que pudiera privarle de su libertad.

Así pues, expresamente, el aludido Artículo 4-A de la Ley de Menores dispone:

> **Antes del Tribunal ejercer su jurisdicción** sobre la persona menor de edad, deberá agotarse todo remedio administrativo establecido en el sistema de educación pública o privada, según sea el caso, cuando la falta que se impute haya tenido lugar en un plantel escolar, ya sea en las inmediaciones de la escuela, en la transportación escolar o en actividades escolares, deportivas con fin recreativo, cultural o académico. **En caso del tribunal tener que asumir su jurisdicción sobre la persona menor, nada de esto se entenderá en menoscabo del derecho del (de la) menor a que su caso sea referido a mediación o desvío, si cualifica según lo establece esta Ley y las Reglas de Asuntos de Menores** (Énfasis nuestro**)**. 32 LPRA 2204a.

### C. Agotamiento de Remedios Administrativos

En nuestro ordenamiento jurídico existe la norma jurisdiccional que evita que los tribunales intervengan cuando se haya incumplido con el requerimiento de agotar remedios administrativos, ya que la aludida doctrina "procura que cuando una parte desea obtener un remedio en una agencia, dicha parte tiene el deber de utilizar todas las vías administrativas a su alcance para ello antes de recurrir al foro judicial". *Guzmán y ortos v. ELA*, 156 DPR 693, 711 (2002).

Es decir, "el propósito de la doctrina es determinar la etapa en la cual el litigante puede recurrir a los tribunales". *Procuradora Paciente v. MCS*, 163 DPR 21, 35 (2004). De esta manera, se evita "una intervención judicial innecesaria y a destiempo que interfiera con el cauce y desenlace normal del proceso administrativo" (citas omitidas). *AAA v. UIA*, 199 DPR 638, 656 (2018). En armonía con lo anterior, el Tribunal Supremo de Puerto Rico ha explicado que esta doctrina tiene varios objetivos, a saber:

> [P]ermitir que la agencia pueda desarrollar un historial completo del asunto ante su consideración; asegurar que la agencia pueda adoptar las medidas correspondientes en conformidad con la política pública formulada por la entidad, y evitar los disloques causados por las intervenciones inoportunas de los tribunales en distintas etapas interlocutorias. Por otro lado, la doctrina en cuestión

facilita la revisión judicial, ya que asegura que los tribunales tengan información más precisa sobre el asunto en controversia y les permite tomar una decisión más informada. De igual forma, promueve una distribución más eficiente de tareas entre los poderes ejecutivo y judicial. *AAA v. UIA*, 200 DPR 903, 914 (2018).

No obstante, esta norma admite excepción en cualquiera de los siguientes supuestos:

(1) dar curso a la acción administrativa cause un daño inminente, material, sustancial y no teórico o especulativo; (2) el remedio administrativo constituya una gestión inútil, inefectiva y que no ofrezca un remedio adecuado; (3) la agencia claramente no tenga jurisdicción sobre el asunto y la posposición conllevaría un daño irreparable al afectado, o (4) el asunto es estrictamente de derecho. *ORIL v. El Farmer Inc.,* 204 DPR 229, 240 (2020).

Sobre las excepciones, nuestro Tribunal Supremo ha expresado que "el mero hecho de invocar una cuestión constitucional no margina automáticamente el proceso administrativo" (Cita omitida). *Procuradora Paciente v. MCS, supra,* pág. 37.

### D. *Manual de Procedimientos de Educación Especial*

El *Manual de Procedimientos de Educación Especial* ("*Manual*") fue instituido "por el Departamento de Educación de Puerto Rico (DEPR) y la Secretaría Asociada de Educación Especial para dirigir los procesos relacionados con la prestación de servicios del programa de educación especial". Véase *Manual,* pág. a. "Este documento está creado para proporcionar orientación y dirección al personal administrativo y docente sobre los procesos relacionados con el programa de educación especial". *Íd.*

En esa dirección, la Sección 18.1 del *Manual* versa sobre los procesos disciplinarios:

1. El proceso educativo, para todos los estudiantes del DEPR debe realizarse en un ambiente de tranquilidad, seguridad, en orden y disciplina en el cumplimiento de las leyes, reglamentos, normas, directrices y principios de buena convivencia.

2. Las medidas disciplinarias están dirigidas a lograr un cambio positivo en el comportamiento del estudiante de forma que redunde en un ambiente seguro y óptimo para el aprendizaje. En toda medida utilizada se considerará que el propósito siempre será para mejorar

el ambiente educativo. Por tal, la determinación de una imposición disciplinaria será proporcional a la falta y tendrá que contribuir a mejorar la conducta del estudiante.

3. Cuando un estudiante con discapacidad presente una conducta que pudiera catalogarse con indisciplina según se establece en el Reglamento General de Estudiantes y Asistencia Obligatoria al Departamento de Educación, la determinación de si la conducta requiere de la aplicabilidad de la medida disciplinaria será establecida por el Comité de Programación y Ubicación (COMPU). Véase, *Manual*, pág. 225.

En esa dirección, la Sección 18.2 del *Manual* regula el procedimiento a seguirse en caso de un incidente de indisciplina:

1. El maestro, funcionario escolar o cualquier persona de la comunidad escolar, que detecte un problema de conducta que requiera la consideración de medidas disciplinarias, informará la situación al director, en un término que no exceda las veinticuatro (24) horas desde la observación del problema de conducta, mediante el formulario SAEE-15 Notificación al director sobre conductas inapropiadas.

2. El director escolar analizará si la conducta presentada es o no un hecho significativo que amerite una imposición de una medida disciplinaria. Para ello, utilizará el formulario **SAEE-15a *Evaluación de la conducta antes de aplicar medida disciplinaria***. Si al completar el formulario se determina que:

   a. **no es un hecho significativo** se reunirá con el maestro, funcionario o la persona que le refirió la situación, analizará la misma y tomará notas en su libreta profesional, para fines de referencia, de surgir un nuevo evento similar al anterior.

   b. **es un hecho significativo, antes de establecer una medida disciplinaria**, procederá a convocar al COMPU como se establece a continuación.

3. El director:

   a. notificará y citará a los padres a través del medio más rápido disponible.

   b. la reunión del COMPU se coordinará para, a más tardar, el día siguiente en que se tiene en conocimiento de los hechos de indisciplina que se le imputan al estudiante; salvo circunstancias extraordinarias que impidan la participación de los integrantes indispensables en dicha reunión. En ese caso, la reunión del COMPU podrá ser pautada hasta cinco días laborables después de que se tuvo conocimiento, sin que esto constituya una dilación innecesaria.

   c. completará el formulario **SAEE-06 *Invitación para reunión con el COMPU*** con el propósito de discutir la conducta.

d. se asegurará que el estudiante se mantenga en su alternativa de ubicación actual hasta tanto no se lleve a cabo la reunión con el COMPU y se examine el caso en su totalidad.

4. En la reunión, el COMPU:

a. evaluarán la conducta documentada en el formulario *SAEE-15*;

b. escucharán la versión de los hechos relatada por el estudiante;

c. analizarán:

   i. el resultado de evaluaciones y diagnósticos, incluyendo la información provista por los padres del estudiante para determinar que la discapacidad del estudiante:

      1) no afectó su capacidad para entender el impacto y las consecuencias de la conducta sujeta a la acción disciplinaria; y 2) no afectó su capacidad para controlar su conducta

   ii. el PEI para determinar que el estudiante recibe:

      1) los servicios educativos, servicios suplementarios y servicios relacionados recomendados que están relacionados o que pudieran incidir en la conducta presentada;

      2) intervención en el área conductual relacionada con el incidente (Parte III.C y Parte V del PEI);

      3) servicios educativos en la alternativa de ubicación más apropiada; y

      4) sus servicios educativos, relacionados y suplementarios como se establece en su PEI (implementación del PEI).

d. Del análisis anterior, el COMPU determinará si la conducta en cuestión:

   i. **fue causada o tuvo una relación directa y sustancial con la discapacidad** del estudiante. En este caso, la conducta deberá ser considerada como una manifestación de la discapacidad del estudiante, por lo cual no se tomará medida disciplinaria y se procederá a realizar las intervenciones del programa necesarias con premura;

   ii. **fue el resultado directo de la falla de la escuela o de la ORE** en implementar el PEI. De ser esta el caso, la conducta se considerará como una manifestación de la

discapacidad, por lo cual no se tomará medida disciplinaria y se procederá a atender las deficiencias o áreas que no han sido implementadas;

iii. **es una manifestación de la discapacidad**. De ser este el caso, el COMPU debe:

1) llevar a cabo una evaluación de comportamiento funcional y un plan de intervención conductual; o

2) revisar el plan de intervención conductual y modificarlo, según sea necesario, para abordar el comportamiento, si ya se ha desarrollado una evaluación y un plan de intervención conductual.

iv. no es una manifestación ni está relacionada a la discapacidad. En este caso, el director escolar completará el formulario **SAEE-15c Planilla de información sobre medida disciplinaria** aplicará el procedimiento disciplinario según se estable en el *Reglamento General de Estudiantes y Asistencia Obligatoria al Departamento de Educación* tomando en consideración que:

1) la medida correctiva o disciplinaria debe ir acorde con la conducta presentada y la gravedad de la situación.

2) podrá utilizar en adición o en sustitución un plan correctivo con la anuencia de los padres, o

3) podrá ofrecer una amonestación verbal, amonestación escrita, traslado de grupo en la misma escuela, referir al personal de apoyo, reponer, restituir, reparar o pagar daños a la propiedad inmueble o hasta suspensión.

i. de considerar la suspensión como la medida disciplinaria a utilizar:

a) se garantizará que la cantidad de días no exceda el término de 10 días lectivos durante el año escolar. Si el estudiante ha recibido más de una medida disciplinaria donde se ha utilizado la suspensión y la sumatoria de estas excede el término de diez días, **antes de aplicar la nueva medida disciplinaria,** el director seguirá las

directrices establecidas en el párrafo 5 de esta sección.

  b) notificará a los padres que durante el tiempo que dure la suspensión el DEPR no está obligado a proporcionar servicios durante los períodos de suspensión.

5) completará el formulario **SAEE-15b Consulta previa a la aplicación de medida disciplinaria**.

6) <u>se asegurará de documentar la medida disciplinaria en el expediente electrónico del estudiante disponible a través de la plataforma MiPE.</u> Véase, *Manual*, págs. 225-229.

De otro lado, la Sección 18.3 del *Manual* regula el procedimiento a seguir cunado se dan circunstancias especiales:

### 18.3 Circunstancias especiales

1. Cuando un estudiante, dentro de la escuela, en las áreas colindantes a la escuela hasta 100 metros alrededor del plantel, cualquier dependencia del DEPR, cualquier actividad auspiciada por el DEPR o dentro de uno los medios de transportación provistos por el DEPR:

   a. lleve un arma o posea un arma;

   b. a sabiendas posee o usa drogas ilegales, o vende o solicita la venta de una sustancia controlada;

   c. ha infligido lesiones corporales graves a otra persona;

   d. pone en riesgo la seguridad propia o la de otros miembros de la comunidad escolar; o

   e. cause grave daño a la escuela, vandalismo o robo;

2. el director, de **forma inmediata:**

   a. notificará y citará a los padres mediante el medio más rápido disponible;

   b. ordenará un cambio de alternativa de ubicación a instrucción en el hogar u hospital (dependiendo cual sea el incidente) por un periodo no mayor de 45 días lectivos (sin que esto constituya una medida disciplinaria) independientemente si es o no una manifestación de la discapacidad;

   c. coordinará una reunión con el COMPU para, a más tardar, el día siguiente en que se tiene en conocimiento de los hechos; salvo circunstancias extraordinarias que impidan la participación de los integrantes indispensables en dicha

reunión. En ese caso, la reunión del COMPU podrá ser pautada hasta cinco días laborables después de que se tuvo conocimiento, sin que esto constituya una dilación innecesaria;

d.  invitará a un facilitador docente de educación especial (FDEE) de la región educativa, el cual participará, ya sea de forma presencial o a través de un medio alterno;

e.  invitará psicólogo, si el estudiante recibe servicios relacionados; y

f.  completará el formulario *SAEE-06 Invitación para reunión con el COMPU* con el propósito de discutir el incidente.

3.  El maestro, funcionario escolar o cualquier persona de la comunidad escolar con conocimiento de la situación, tendrá un término de veinticuatro (24) para completar el formulario *SAEE-15 Notificación al director sobre conductas inapropiadas*.

4.  En la reunión, el COMPU:

a.  evaluarán la conducta documentada en el formulario SAEE-15;

b.  escucharán la versión de los hechos relatada por el estudiante;

c.  analizarán si la conducta reflejada está o no relacionada con su impedimento; Para ello, utilizarán el formulario *SAEE-15a Evaluación de la conducta antes de aplicar medida disciplinaria* para:

i.  evaluar el resultado de evaluaciones y diagnósticos, incluyendo la información provista por los padres del estudiante para determinar que la discapacidad del estudiante:

1)  no afectó su capacidad para entender el impacto y las consecuencias de la conducta sujeta a la acción disciplinaria; y si

2)  no afectó su capacidad para controlar su conducta

d.  analizarán el PEI para determinar que el estudiante recibe:

i.  los servicios educativos, servicios suplementarios y servicios relacionados recomendados que están relacionados o que pudieran incidir en la conducta presentada;

ii.  intervención en el área conductual relacionada con el incidente (Parte III.C y Parte V del PEI); y los

iii.  servicios educativos en la alternativa de ubicación más apropiada.

e. Del análisis anterior, el COMPU determinará:

   i. **si la conducta es una manifestación de la discapacidad.** De serlo podrán:

      1) recomendar revaluar en el área de discapacidad y/o en otra área adicional relacionada con la conducta que permita tener un perfil más reciente;

      2) recomendar referir al estudiante para un programa de rehabilitación o conductual ofrecidos a través del Departamento de Salud, a través de la cubierta médica del estudiante;

      3) realizar una evaluación funcional de la conducta e implementar el plan de intervención conductual;

      4) enmendar el PEI para:

      a) , se recomiende una localización que atienda las necesidades del estudiante.

   i. **si el hecho no está relacionado con su discapacidad**, el personal escolar:

1. **seguirán el procedimiento establecido para atender faltas graves (III) según se dispone en el Reglamento General de Estudiantes y Asistencia Obligatoria al Departamento de Educación donde se establece la notificación inmediata a la Policía de Puerto Rico;** (énfasis nuestro)

2. se asegurarán de que el expediente de educación especial y cualquier expediente disciplinario que exista sobre el estudiante esté disponible. Ninguna disposición de la ley prohíbe tal notificación o impide que las autoridades judiciales ejerzan su responsabilidad en cuanto a la aplicación de leyes federales y estatales relacionadas con crímenes cometidos por un niño, o joven con discapacidades;

3. adicional a la medida disciplinaria, se considerará referir al estudiante para servicios de parte del programa de consejería escolar, trabajo social o servicios psicológicos del DEPR para evaluación y atención (de ser requerida) en estas áreas;

4. completarán el formulario SAEE-15c Planilla de información sobre medida disciplinaria;

5. enviarán por fax o mediante correo electrónico a la SAEE el formulario SAEE-15c, por cada incidente;

6. documentarán el incidente en el expediente electrónico del estudiante a través de la plataforma MiPE; y

7. orientarán a los padres y al estudiante sobre sus derechos y entregarán una copia del documento Derechos de los padres. Véase, *Manual*, págs. 230-233.

### III.

En el presente caso, el Peticionario nos invita a que intervengamos en la *Resolución* dictada por el tribunal *a quo* el 25 de noviembre de 2025. Mediante el referido dictamen, el foro primario denegó la solicitud de desestimación instada por el menor. Así pues, el Peticionario sostiene como su único señalamiento de error, que el foro primario incidió al no desestimar la *Queja-Querella* presentada contra éste, ello pese a que el Pueblo no agotó los remedios administrativos, lo cual contraviene el Artículo 4-A de la Ley de Menores, *supra*. Veamos.

En nuestro ordenamiento jurídico, el procesamiento de los ciudadanos que son menores de dieciocho (18) años se rige por la Ley de Menores, *supra*. Esta legislación ofrece "un enfoque filosófico penal ecléctico de rehabilitación del menor a la vez que se le exige responsabilidad por sus actos." *Pueblo en interés Menor LABM*, 188 DPR 232, 237 (2013). Asimismo, el Artículo 4 de la Ley de Menores, *supra*, "regula la jurisdicción de la Sala de Asuntos de Menores del Tribunal Superior". *Pueblo v. Suarez*, 167 DPR 850 (2006).

Cónsono con lo anterior, mediante la aprobación de la Ley Núm. 47-2022, *supra*, la Asamblea Legislativa incorporó el Artículo 4-A a la Ley de Menores, *supra*, el cual, en lo pertinente, dispone que "[a]ntes del Tribunal ejercer su jurisdicción sobre la persona menor de edad, deberá agotarse todo remedio administrativo establecido en el sistema de educación pública o

privada, según sea el caso, cuando la falta que se impute haya tenido lugar en un plantel escolar, ya sea en las inmediaciones de la escuela, en la transportación escolar o en actividades escolares, deportivas con fin recreativo, cultural o académico".

Es preciso determinar el alcance de esta disposición, por tanto, hay que evaluar la intención legislativa al incorporarse el referido artículo a la Ley de Menores, *supra*, con el fin de que "la interpretación debe ser razonable y consecuente con el propósito legislativo". *Consejo Titulares v. MAPFRE*, 208 DPR 761, 784 (2022). En ese sentido, "la fuente que se ha de consultar para descifrar **la verdadera intención del legislador** es el historial legislativo del estatuto en cuestión, incluyendo **la exposición de motivos de la ley,** los informes rendidos por las comisiones de las cámaras y los debates celebrados en el hemiciclo". *Class Fernandez v. Metro Health Care*, 214 DPR 348, 366 (2024).

En el caso específico del Artículo 4-A, la Ley Núm. 47-2022, *supra*, este enmendó la Ley de Menores, *supra*, a los fines de incorporar el aludido artículo a la misma. Esta esboza claramente en la Exposición de Motivos lo siguiente:

### Agotamiento de Remedios Administrativos

Según datos obtenidos para el Departamento de Educación de Puerto Rico y el Consejo de Educación Superior de Puerto Rico, cerca del 73% de los (las) estudiantes matriculados(as) en Puerto Rico pertenecen al sistema de educación pública, mientras que un 27% pertenecen al sistema de instrucción privado. En la actualidad, el Departamento de Corrección y Rehabilitación reveló que la población en las Instituciones Juveniles de Puerto Rico estaba compuesta por 82 menores confinados(as) en instituciones juveniles, de los cuales, 80 son varones y 2 féminas y que las edades de los (las) menores rondan entre los catorce (14) y veintiún (21) años de edad. Asimismo, se desprende del censo que sobre el 80% de los (las) menores provenían del sistema público de enseñanza y que solo el 20% de los (las) menores alcanzó el duodécimo grado. **El 51% de los (las) menores transgresores(as) eran egresados(as) del Programa de Educación Especial previo al ingreso del sistema juvenil de justicia, empero solo el 35% eran estudiantes activos del Programa de Educación Especial. De igual forma, según el perfil, el 36% de los(las) menores reportó tener alguna discapacidad.**

TA2025CE00949

18

Por otro lado, al revisar las faltas, solo el 4% de las mismas fueron contra la vida, **siendo el mayor porcentaje de las faltas contra la propiedad o violaciones a la Ley de Sustancias Controladas, con 32% y 22%,** respectivamente. Al evaluar patrones de violencia en contra de estos(as) menores o su núcleo familiar, se encontró que el 43% había sido víctima de maltrato y 23% de los (las) menores fueron víctimas de trata o explotación previo a su ingreso. La mayoría de los (las) menores provienen de hogares de escasos recursos y dependientes de asistencia nutricional del Gobierno. De los datos publicados por el Departamento cabe destacar que el 92% de los (las) menores detenidos(as) fueron varones cuyas edades fluctuaban entre los 8 años o menos, el 46% de los menores había tenido algún familiar confinado, el 58% de los (las) menores procedían de un núcleo familiar en cuyo único ingreso provenía de subsidios o ayudas públicas y el 72% de los (las) menores de edad ingresados(as) en las instituciones juveniles se encontraban bajo el índice de pobreza.

Al observar el nivel socioeconómico promedio de los (las) menores bajo la custodia de la Administración de Instituciones Juveniles con los datos obtenidos sobre la matrícula en las escuelas públicas del país, vemos que una considerable porción de las querellas atendidas en la Sala de Asuntos de Menores se presenta en contra de menores que provienen de escuelas públicas y pertenecen a familias de escasos recursos económicos. Asimismo, es importante señalar que el sistema judicial no ofrece un trato igual a los (las) estudiantes que provienen de escuelas privadas, en comparación con aquellos(as) que pertenecen al sistema de instrucción pública. Esta situación se patentiza al evaluar cómo se canaliza un evento o incidente dentro de un plantel escolar público en comparación con el procedimiento que opera en el sistema privado. **Resulta preocupante esta realidad al considerar que actualmente el Reglamento de Estudiantes del Departamento de Educación dispone procesos específicos que reconocen remedios administrativos internos que pueden agotarse previo a solicitar la intervención del sistema judicial.**

Por todo lo antes expuesto, esta Asamblea Legislativa tiene el interés de que se agoten los remedios administrativos previo que se presenten querellas contra menores ante el Tribunal cuando se trate de hechos ocurridos dentro de los planteles escolares. A tales efectos, se enmienda la Ley de Menores a los fines de requerir el agotamiento de remedios administrativos establecidos en el sistema de educación público o privado cuando la situación elevada a la consideración del foro judicial se origine en la institución educativa. **De esta manera, pretendemos proveer alternativas adicionales para la solución de conflictos ocurridos dentro del plantel escolar, sin la necesidad de que, de entrada, se exponga al (la) menor a enfrentar un proceso judicial que pudiera privarle de su libertad** (Énfasis nuestro). Véase, Exposición de Motivos, Ley Núm. 47-2022.

Nótese que la Asamblea Legislativa destacó que el Departamento de Educación de Puerto Rico posee "procesos específicos que reconocen remedios administrativos internos que pueden agotarse previo a solicitar la intervención del sistema

judicial." En esa dirección, el Legislador hace referencia al *Reglamento de Estudiantes del Departamento de Educación.* Este, a su vez, reconoce que aquellos procedimientos administrativos que involucren a estudiantes de educación especial deben regirse por los postulados contenidos en el *Manual de Procedimientos de Educación Especial* (*Manual*).[9] Esto último es pertinente, toda vez que, ambos, tanto el menor imputado de la falta, como la perjudicada en este caso **pertenecen al programa de educación especial.**

Recientemente, este asunto ha sido atendido por este foro apelativo. No empece a ello, nos corresponde determinar si procede o no agotar remedios administrativos conforme al Artículo 4-A de la Ley de Menores, *supra,* en el presente caso o si, por otro lado, trata sobre una jurisdicción primaria concurrente.  En tal sentido, es necesario distinguir los hechos particulares del presente caso, de las determinaciones previamente emitidas por dos (2) paneles hermanos, y que fueron citadas en la *Resolución* recurrida, a saber, *Pueblo en interés del Menor D.J.Q.M.,* KLCE202300634 y *Pueblo en interés del Menor J.E.R.T.,* TA2025CE00117. Ciertamente, en ambos casos se cuestiona el alcance del Artículo 4-A de la Ley de Menores, *supra.* Sin embargo, es preciso distinguir que en dichos casos no se trataba de faltas incurridas por menores del programa de educación especial, como ocurre en el caso de autos. De hecho, luego de escuchada la regrabación de los procedimientos del 2 de octubre de 2025, quedó claramente establecido que en el caso *Pueblo en interés del Menor J.E.R.T* aplicaban las disposiciones contenidas en el *Reglamento General*

---

[9] En lo concerniente a los procedimientos disciplinarios, la Sección 12.2 A. 2. b del *Reglamento General de Estudiantes y Asistencia Obligatoria del Departamento de Educación de Puerto Rico* establece:

> b. Los procedimientos disciplinarios a aplicarse a los estudiantes de educación especial se regirán por las disposiciones establecidas por el Manual de Procedimientos de Educación Especial.

*de Estudiantes,* y en el de marras, aplica el *Manual,* el cual contiene procedimientos adicionales los cuales favorecen el proceso de investigación. En concreto, en la aludida vista, la representación legal del menor expuso lo siguiente:

> LCDA. MELÉNDEZ: Con lo que el tribunal ha escuchado en la tarde de hoy, que a diferencia del caso, que el tribunal, verdad, en su momento, tuvo la oportunidad de examinar y que es un caso de esta jurisdicción.
>
> JUEZ: *Pueblo en interés del Menor JERT*
>
> LCDA. MELÉNDEZ: JERT. En ese caso en particular, a diferencia de este, estamos hablando de un joven que era de la corriente regular. En ese caso estamos hablando de un joven de educación especial. En el caso de JERT se aplicaba el Reglamento General de Estudiantes y en el caso que nos ocupa aplica el Manual de Educación Especial. Que si usted evalúa Honorable, ambos ... el Reglamento y el Manual, en relación a los menores que tienen alguna discapacidad, que tienen algún diagnóstico, se tiene que llevar a cabo un proceso más, que yo estoy segura que probablemente hubiera ayudado a la compañera en su proceso de investigación, eh pero lamentablemente, en este caso no se llevó y que conforme al Artículo 4-A de la Ley de Menores, según ha sido enmendado, eh nosotros solicitamos que este Tribunal lo evalúe, evalúe todo Honorable, evalúe el testimonio, evalúe los documentos y solicitamos que el tribunal desestime el caso y esto no implica que en un momento dado si se cumple con un proceso administrativo, nada impide que la compañera, si entiende necesario, se ... radique un caso. Pero ciertamente el fin y propósito de enmendar la Ley de Menores era evitar que menores de las escuelas en situaciones donde ocurre en las escuelas, transportación escolar, ya habiendo un reglamento y ya habiendo dicho la directora en este caso, que casos como el presente, donde es de índole sexual, la compañera utilizó agresión sexual, esto no es un caso de agresión sexual, esto es un caso de actos, verdad, de actos lascivos alegadamente. Ella entiende, la directora que si tiene programación dirigidas a eso y es por esta razón Honorable que nosotros solicitamos que este Tribunal desestime el presente caso. [10]

Cónsono con lo anterior, es menester destacar que el *Manual* dispone un procedimiento detallado para atender situaciones disciplinarias que involucran a estudiantes de educación especial. El mismo establece que se evaluará si la conducta es un hecho significativo o no, si la discapacidad afectó su capacidad para entender el impacto y las consecuencias de la conducta sujeta a la acción disciplinaria, si fue a causa o tuvo relación directa y sustancial con la discapacidad del estudiante, o si fue el resultado

---

[10] Véase, Regrabación de la vista argumentativa llevada a cabo el 2 de octubre de 2025, min. 1:35:28- 1:37:30.

directo de una falla de la escuela o una manifestación de discapacidad. Véase, *Manual*, págs. 225-228.

Dicha evaluación se efectúa en conjunto a una serie de profesionales, entiéndase, un psicólogo, un facilitador docente de educación especial, entre otros. Véase, *Manual*, pág. 230. Asimismo, si la conducta evaluada no es una manifestación de la discapacidad del estudiante, el *Manual* establece que el mecanismo a seguir para notificar a las autoridades en caso de que, en efecto, la conducta en cuestión constituya una falta grave. Véase, *Manual*, pág. 232.

Por otro lado, resulta inverosímil que en el presente caso la directora de la escuela, a la que asiste el menor AJDJT, advino en conocimiento de los hechos al recibir el *subpoena* del Departamento de Justicia. Ello, contrario a lo dispuesto en el *Manual.* El mismo, establece, que debe ser notificada en un término que no exceda veinte cuatro (24) horas desde la observación del problema de conducta.

Ante estas circunstancias, somos del criterio de que, en este caso específico que se le imputa una falta a un menor de la corriente de educación especial, particularmente, Ruta 1, el Departamento de Educación cuenta con las herramientas necesarias para **atender, en primera instancia, la acción imputada en el caso de autos.** En ese sentido, obviar el proceso previo a someter una *Queja-Querella* ante el foro primario, contravino lo dispuesto en el Artículo 4-A de la Ley de Menores, *supra*, máxime, tratándose de un estudiante de educación especial.

A nuestro juicio, la intención legislativa es proteger a esa población de educación especial de tener que enfrentar procesos judiciales cuando surgen incidentes en el ámbito escolar sin agotar los remedios administrativos. Nótese que, las estadísticas que esboza el acápite de agotamiento de remedios administrativos

hacen alusión, particularmente, al perfil de menores transgresores que reportaron algún grado de discapacidad.

No obstante lo antes expuesto, ello no impide que, una vez agotados los remedios, el Pueblo pueda iniciar un procedimiento contra el menor conforme a la Ley de Menores, *supra.*

En fin, a tono con los fundamentos previamente esbozados, el error esgrimido por el Peticionario se cometió en el presente caso, por lo que procede revocar el dictamen recurrido y consecuentemente, desestimar el caso en el foro *a quo* contra el menor AJDJT, para que se agoten los remedios administrativos.

**IV.**

Por los fundamentos antes expuestos, **expedimos** el auto de *certiorari* y **revocamos** el dictamen recurrido. En consecuencia, **ordenamos** la desestimación del caso instado en contra del menor AJDJT, sin perjuicio de que el Pueblo, de entenderlo procedente, presente nuevamente la causa judicial una vez culminen los procesos administrativos de rigor.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones. El Juez Pagán Ocasio disiente con la siguiente expresión: "Ante la gravedad de los hechos imputados y el auge en los casos de violencia sexual entre menores, respetuosamente disiento. Además, los fundamentos consignados en mí ponencia del caso TA2025CE00117, con hechos y argumentos legales casi idénticos a los del caso de autos, fundamentan mí disenso".

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones